# EXHIBIT A

## IN THE CIRCUIT COURT
## FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| ABIGAIL EASON<br>5910 Ottawa St.<br>Oxon Hill, MD 20745<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LVNV FUNDING, LLC<br>355 S Main Street, Ste 300-D<br>Greenville, SC, 29601<br>Serve Resident Agent:<br>　CSC-Lawyers Incorporating Service<br>　Company<br>　7 St. Paul Street, Suite 820<br>　Baltimore, MD, 21202<br><br>RESURGENT CAPITAL SERVICES, LP<br>55 Beattie Place, Suite 110, Ms425<br>Greenville, SC, 29601<br>Serve Resident Agent:<br>　CSC-Lawyers Incorporating Service<br>　Company<br>　7 St. Paul Street, Suite 820<br>　Baltimore, MD, 21202<br><br>　　　　Defendants. | Case No.:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Defendants hounded Plaintiff to pay a debt that was a result of Identity theft. They ignored Plaintiff's many complaints, and sued her on two fraudulent debts. They also reported the fraudulent debts to the credit reporting agencies, damaging Plaintiff's creditworthiness, and failed to properly investigate her credit reporting disputes.

## PARTIES

1. Plaintiff is a resident of Prince George's County, Maryland.

2. Defendant LVNV Funding, LLC is a Delaware Limited Liability Company. Its principal office is in Greenville, South Carolina. It has a resident agent in Maryland.

3. LVNV is also a licensed consumer collection agency in Maryland.

4. Defendant Resurgent Capital Services, LP is a Delaware Limited Partnership. Its principal office is in Greenville, South Carolina. It has a resident agent in Maryland.

5. Resurgent is also a licensed consumer collection agency in Maryland.

6. Defendant LVNV is a debt buyer which purchases consumer debt for the purpose of collecting money from consumers. LVNV purchases large amounts of debt from Credit One Bank.

7. LVNV holds "assets", in the form of consumer debt, but has no employees. Its function is to own debts, and to be a plaintiff in collection actions against consumers.

8. Resurgent is an affiliate of LVNV. Resurgent has employees and collects debts owned by LVNV, either directly, or by retaining third party debt collectors and attorneys.

9. Resurgent is also responsible for credit reporting on debts owned by LVNV. Resurgent furnishes data regarding LVNV's accounts to the credit reporting agencies and receives and review disputes relating to those accounts.

## JURISDICTION

10. This court has jurisdiction over the Defendants under Md. Code Ann., Cts. & Jud. Proc. § 6-102 because each does business in Maryland and Plaintiffs' claim arise from that business.

11. Venue is proper in Prince George's County under Md. Code Ann., Cts. & Jud. Proc. § 6-201 because Plaintiff's causes of action arose in this county and Defendants regularly carry on business in this County.

**FACTS**

12. Plaintiff Abigail Eason ("Ms. Eason") was the victim of a crime. In 2016 an unknown person broke into her car and stole credit cards and identifying documents. She immediately reported the theft to the police.

13. After the break in, an unknown identity thief borrowed money in her name from various creditors.

14. Two of these fraudulent accounts were credit card accounts with Credit One Bank, N.A., a Nevada-based national bank specializing in credit cards, particularly for borrowers with low credit scores.

15. The identity thief ran up a debt of $2,251 on one account. (The "$2251 Account").

16. The identity thief ran up a debt of $1,202 on the other account (The "$1202 Account").

17. After the identity thief defaulted on both accounts, LVNV sought to collect them from Ms. Eason, claiming that Credit One Bank assigned the accounts to LVNV.

18. When Ms. Eason discovered the identity theft, she told all the banks at which the ID thief had opened accounts, including Credit One.

19. All the creditors, including Credit One Bank ultimately deleted their reporting of the fraudulent accounts.

20. Credit One Bank deleted its reporting of the fraudulent accounts.

21. However, at a time unknown to Ms. Eason, Credit One Bank sold the

fraudulent accounts to LVNV.

22. Ms. Eason complained to LVNV and Resurgent when they attempted to collect the Fraudulent Accounts from her.

23. Ms. Eason provided them with a copy of the report she filed after her car was broken into and explained that she was a victim of identity theft.

24. LVNV, however, maintained that its reporting of the fraudulent Credit One accounts was accurate, and maintained them on her credit reports.

25. On February 5, 2021, LVNV sued Ms. Eason in the District Court of Maryland for Prince George's County in Case No. 05020003731-2021, on the $1202 Account ("Collection Action 1").

26. On February 8, 2021, LVNV sued Ms. Eason in the District Court of Maryland for Prince George's County in Case No. 0502-0003787-2021, on the $2251 Account ("Collection Action 2").

27. LVNV failed to serve either Collection Action on Ms. Eason.

28. On March 22, 2023, LVNV dismissed Collection Action 1.

29. In June 2023, a process server acting for LVNV left complaint and summons in Collection Action 2 on the doorstep of a tenant living at a property Ms. Eason owned.

30. Ms. Eason was sent the complaint and summons by her tenant.

31. Ms. Eason complained to the Consumer Financial Protection Bureau ("CFPB") about the fraudulent accounts. The CFPB referred her complaint to the Office of the Comptroller of the Currency ("OCC").

32. Ms. Eason filed a defense explaining, again, that she was a victim of identity theft.

33. LVNV then filed a notice of intention to offer certified business records, evincing its intention to continue collecting on Ms. Eason.

34. A "Resolution Conference" was set for August 11, 2023, in Collection Action 2.[1]

35. On July 29, 2023, Credit One told Ms. Eason that Credit One had repurchased the Fraudulent Accounts from LVNV.

36. On August 10, 2023, LVNV dismissed Collection Action 2.

37. Ms. Eason appeared in court on August 11, 2023.

38. LVNV's attorney appeared and asked Ms. Eason to settle the Fraudulent Account. Ms. Eason explained that she would not pay and did not owe the money. LVNV's attorney demanded that Ms. Eason fill in another notice of intention to defend. Ms. LVNV's attorney then told Ms. Eason that she would re-serve her and continue the lawsuit.

39. The same day it dismissed Collection Action 2, LVNV filed a "resolution conference request" with the court in Collection Action 2, requesting that the court set a date for a "resolution conference."

## Credit Reporting Disputes

40. Ms. Eason disputed the Fraudulent Accounts with the national credit reporting agencies, Equifax, Trans Union and Experian.

41. Ms. Eason disputed the Fraudulent Accounts through the website of each national credit reporting agency, between February and July 2022.

---

[1] A "resolution conference" in Prince George's County District Court is a hearing which parties are required to attend, at which defendants are requested to speak with attorneys representing plaintiffs in collection actions. Although such hearings are not trials, Defendants are summoned by compulsory process to attend them.

42. On information and belief, each credit reporting agency electronically forwarded those disputes to Resurgent, as LVNV's agent.

43. Each time she disputed the Fraudulent Accounts, Resurgent, acting for LVNV maintained that Fraudulent Accounts were accurate, and that Ms. Eason owed the money.

44. On information and belief Resurgent and LVNV together failed to conduct a reasonable investigation of Ms. Eason's disputes. This is based on the facts the following:

   a. Ms. Eason had previously provided LVNV, through its agents, with a copy of her report about the original vehicle break-in that led to the opening of the Fraudulent Accounts.

   b. When LVNV purchased the accounts from Credit One, Ms. Eason had already disputed them.

   c. LVNV knew that Credit One had sold it accounts that were the result of identity theft in the past. It knew this because LVNV has been sued by consumers for collecting on fraudulent Credit One Bank accounts in the past.

   d. When Ms. Eason complained to the CPFB, Credit One determined that the accounts were fraudulent and repurchased the accounts, demonstrating that a reasonable investigation at an earlier time would have reached the same conclusion.

**Damages**

45. Ms. Eason was damaged by Defendants' conduct.

46. Ms. Eason suffered emotional distress both without and with physical

manifestations, including:

    a. Loss of sleep;

    b. Anger;

    c. Anxiety

    d. Depression

    e. Loss of appetite

    f. Vomiting

    g. Headaches

    h. Nausea

    i. Weight gain

    j. Hair loss

    k. Distraction for her normal activities

47. Ms. Eason was particularly distressed by Defendants' collection activity preventing her from taking out a home equity loan in 2022. This in turn is because Ms. Eason needed that loan to make alternations to her home, to allow her ailing mother to live with her. Ms. Eason's mother died in September 2022, with Defendants' collection efforts still going on.

48. Ms. Eason has had to explain this identity theft, and Defendants' insistence that she owes the money every time she has applied for government employment.

49. Defendants' insistence that Ms. Eason owes the money on the fraudulent accounts has damaged Ms. Eason's professional reputation as a real estate appraiser, making it more difficult for her to work as an independent contractor.

## COUNTS

### COUNT I.   Maryland Consumer Debt Collection Act, Md. Code Ann. ("MCDCA"), Com. L. § 14-201 et seq.

50. Defendant is a "collector" within the meaning of Md. Code Ann., Com. L. § 14-201(b) because it was attempting to collect an alleged debt arising from a consumer transaction.

51. Defendant violated Md. Code Ann., Com. L. § 14-202(8) by claiming, attempting, or threatening to enforce a right with knowledge or reckless disregard that the right did not exist.

52. Defendants knew or should have known that Ms. Eason was a victim of identity theft and did not owe on the Fraudulent Accounts.

53. Defendants' knowledge is demonstrated by the fact that they dismissed the Collection Actions when Ms. Eason appeared to defend them.

54. Defendant violated Md. Code Ann., Com. L. § 14-202(11) by engaging in conduct that violated the Fair Debt Collection Practices Act, by attempting to collect debts from Ms. Eason that she did not owe.

55. Defendants actions damaged Ms. Eason as set forth in the damages section.

**Therefore,** Plaintiff asks for:

A. Actual damages in excess of $75,000.00 to be assessed by a jury;

B. Costs;

C. Such other and further relief as Plaintiff's cause may require.

## COUNT II.  Maryland Consumer Protection Act, Md. Code Ann., Com. L. § 13-101 et seq.

56. The Plaintiff is a "consumer" as defined by § 13-101(c)(1) of the MCPA, and the alleged debt relates to a "consumer debt" as defined by § 13-101(d)(1). *Goshen Run Homeowners Ass'n, Inc. v. Cisneros,* 467 Md. 74, 95, 223 A.3d 917, 929 (2020)("HOA assessments and charges fit within the broad definition of "consumer debt" under the Consumer Protection Act.")

57. Each of the parties to this action is a "person" as defined by § 13-101(h) of the MCPA.

58. In enacting the Consumer Protection Act, the Legislature made the following Legislative Findings:

> (a)(1) The General Assembly of Maryland finds that consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.
>
> (2) The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced.
>
> \*     \*     \*
>
> (b)(2) The General Assembly is concerned that public confidence in merchants offering goods, services, realty, and credit is being undermined, although the majority of business people operate with integrity and sincere regard for the consumer.
>
> (3) The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to

> accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

Md. Code Ann., Com. Law § 13-102.

59.     In enacting the MCPA, the Legislature expressed its explicit intent as follows: "[t]his title is intended to provide minimum standards for the protection of consumers in the State." Md. Code Ann., Com. Law § 13-103(a).[2]

60.     The Legislature also said that the MCPA "shall be construed and applied liberally to promote its purpose." Md. Code Ann., Com. Law § 13-105. As one court observed, "[t]he Act is intended to be liberally construed in order to achieve its consumer protection objectives." *State v. Cottman Transmissions Sys., Inc.,* 86 Md. App. 714, 743, 587 A.2d 1190, 1204 (1991).

61.     Md. Code Ann., Com. L. § 13-303(1) prohibits unfair or deceptive practices in the sale of consumer goods, consumer services, and the extension of consumer credit.

62.     Md. Code Ann., Com. L. § 13-303(5) states that "A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in: . . . The collection of consumer debts." (Emphasis added ).

63.     Md. Code Ann., Com L. §13-408(a) states that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title."

64.     Md. Code Ann., Com. L. §13-408(b) states that "any person who brings an action to recover for injury or loss under this section and who is awarded damages may

---

[2] "The 1986 amendment of the Act to include a private cause of action was designed 'to improve the enforcement' of the Act for the benefit of those consumers. *See* Report of Senate Judicial Proceedings Committee concerning Senate Bill 551 (March 7, 1986)." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 167, 59 A.3d 1016, 1029 (2013).

also seek, and the court may award, reasonable attorney's fees ."

65. The conduct of the Defendant is within contemplation of the MCPA because it involves collection of consumer debt. 13-301(14)(iii) and 13-303(5).

66. Defendants violated Md. Code Ann., Com. L. § 13-301(14)(iii) by violating the MCDCA as aforesaid.

67. Defendants violated Md. Code Ann., Com. L. § 13-301 by using an unfair practice to collect a debt, by attempting to collect a debt arising from an identity theft from the identity theft victim.

68. Defendants actions damaged Ms. Eason as set forth in the damages section.

**Therefore,** Plaintiff asks for:

A. An award of actual damages in excess of $75,000 to be assessed by the jury;

B. An award of reasonable attorneys fees and costs;

C. Such other and further relief as Plaintiff's cause may require.

**COUNT III.**     **Fair Credit Reporting Act 15 U.S.C. §1681s-2(b)**

69. Each Defendant is a furnisher of information to the national credit reporting agencies.

70. Defendants had an obligation under § 1681s-2(b) to conduct a reasonable investigation of any dispute transmitted to them by a CRA.

71. Defendants violated § 1681s-2(b) by conducting only superficial, unreasonable investigations.

72. Defendants acted willfully in failing to investigate because they already knew that they could not verify that Plaintiff was liable on the account.

73. Defendants knew that Credit One Bank had sold LVNV fraudulent accounts

in the past.

74. Defendants knew that Plaintiff had consistently disputed the Fraudulent Accounts over a period of years.

75. Defendants lacked any evidence to show that *Plaintiff* rather than an identity thief had opened and used the Accounts.

76. When Credit One Bank did an adequate investigation following Plaintiff's CFPB complaint, it easily established the truth: that Ms. Eason did not owe anything on the accounts.

77. Plaintiff was damaged as set out in the damages section above.

**Therefore,** Plaintiff asks for:

A. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

B. An amount of punitive damages to be determined by the jury in excess of $75,000;

C. An award of costs and reasonable attorneys' fees to Plaintiff;

D. Such other and further relief the nature of the Plaintiff's cause may require.

**COUNT IV. Fair Debt Collection Practices Act 15 U.S.C. § 1692a et seq.**

78. At all material times, Plaintiff was a "consumer" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

79. At all material times, Plaintiff's alleged debt was a consumer debt as defined by the FDCPA, 15 U.S.C.A. § 1692a(5) because it was an "alleged obligation . . . to pay money arising out of a transaction . . . primarily for personal, family or household purposes."

80. At all material times, Defendant Resurgent was a "debt collector" as defined by 15 U.S.C. § 1692a(6), because it "regularly . . . attempts to collect, directly or indirectly, debts . . . asserted to be owed or due another."

81. At all material times herein, Defendant LVNV was a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it was a business "the principal purpose of which is the collection of any debts."

82. Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of the allege debt, when they, through their attorney, demanded payment from Plaintiff on August 11, 2023, requested a resolution conference in Collection Action 2, and gave notice of intent to rely on business records in Collection Action 2.

83. Defendant violated 15 U.S.C. § 1692e(5) by taking or threatening to take action that could not legally be taken, when they through their attorney demanded payment from Plaintiff on August 11, 2023, requested a resolution conference in Collection Action 2, and gave notice of intent to rely on business records in Collection Action 2.

84. Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to attempt to collect a debt or obtain information concerning a consumer, when they through their attorney demanded payment from Plaintiff on August 11, 2023, requested a resolution conference in Collection Action 2, and gave notice of intent to rely on business records in Collection Action 2.

85. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect a debt by attempting to collect a debt arising from identity theft, despite Plaintiff's disputes and despite knowledge that the seller of the debt had previously sold

fraudulent accounts.

86. Defendants' false representations were material because they were of a type that would be important to a consumer in deciding how to respond to Defendant's collection efforts, because they were related to the validity of the debt.

**Therefore,** Plaintiff asks for:

A. Actual damages in excess of $75,000.00 to be assessed by a jury;

B. Statutory Damages of $1,000.00;

C. Costs;

D. Reasonable Attorneys Fees;

E. Such other and further relief as Plaintiff's cause may require.

### NOTICE OF CLAIM FOR ATTORNEYS' FEES

87. Pursuant to Rule 2-703(b) the Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading.  Further, pursuant to Rule 2-703(d), the Plaintiff advises the court and the Defendants that he believes that this case is likely to result in a substantial claim for attorneys' fees for services over a significant period of time.

Respectfully submitted,

Dated: February 5, 2024

By: _/s/ Emanwel J. Turnbull_
Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133

                                            Facsimile: (410) 280-8650
                                            eturnbull@hollandlawfirm.com

                                            *Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: February 5, 2024

                                                                                                    By: */s/ Emanwel J. Turnbull*
Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

*Counsel for Plaintiff*